UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DEBORAH MORRIS

CIVIL ACTION

VERSUS

NO. 15–00562–SDD–RLB

BATON ROUGE CITY CONSTABLE'S OFFICE

**RULING**

Before the Court is a *Motion for Summary Judgment* filed on behalf of the Defendant, the Baton Rouge City Constable's Office.[1]  Plaintiff, Deborah Morris, has filed an *Opposition* to which the Defendant has filed a *Reply*.[2]  The Court's jurisdiction exists pursuant to 28 U.S.C. § 1331.  Oral argument is unnecessary.  For the following reasons, the *Motion* shall be granted in part and denied in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Deborah Morris ("Morris" or "Plaintiff") is a female deputy constable who has worked for the Baton Rouge City Constable's Office ("Constable's Office" or "Defendant") for approximately eight years.[3]  From 2010 until 2016, Morris was assigned to Court Security.[4]  Her regular duties included working the security line at the entrance of Baton Rouge City Court ("City Court").[5]  Occasionally Morris was stationed in a courtroom to provide security.[6]  For a period of time Morris was also stationed at the Department of

---

[1] Doc. 41.   This is the Defendant's third motion for summary judgment.
[2] Doc. 50; Doc. 51.
[3] Doc. 41-1, p. 1; Doc. 50-1, p. 1.
[4] Doc. 41-1, p. 1; Doc. 50-1, p. 1.
[5] Doc. 41-1, p. 1; Doc. 50-1, p. 1.
[6] Doc. 41-1, p. 1; Doc. 50-1, p. 1.

Motor Vehicle branch ("DMV") located on the third floor of the City Court to provide security.[7]

Initially, Morris and her immediate supervisor, Sergeant Alvin Jackson ("Jackson"), had a good working and personal relationship.[8]  For instance, Jackson accommodated Morris' work schedule because she was a single parent to enable her in facilitating her childcare needs.[9]  Morris was allowed to report for duty at 8:00am, instead of the regular 7:30am start time.[10]

Plaintiff contends their relationship became hostile after she declined Jackson's unwelcome sexual advances.[11]  According to Morris, shortly after she was assigned to Court Security in May of 2010, Jackson invited her to go to lunch with him.[12]  Jackson brought Morris to his home for lunch, explaining that he invited every new deputy in his division to his home for lunch.[13]  While touring his home, Jackson told Morris: "If you push me back against the wall, I'll have to fight you back."[14]  Morris also attests that Jackson would repeatedly call her into his office and instruct her to close the door.[15]  Eventually, Morris claims that she confronted Jackson explaining that "his actions towards [her] were inappropriate and disrespectful."[16]  In response, Morris believes that Jackson began to treat her differently than her colleagues.[17]

---

[7] Doc. 41-1, p. 1; Doc. 50-1, p. 1.
[8] Doc. 50-6, p. 29.  Jackson served as Morris' immediate supervisor while she was assigned to Court Security.  As of April 2016, Jackson is no longer Morris' direct supervisor.  Doc. 41-5, p. 1.  Morris no longer works in Court Security; she is now working in the jail.  Doc. 50-2, p. 8.
[9] Doc. 50-1, p. 2; Doc. 41-1, p. 2; Doc. 41-5, p. 1; Doc. 50-6, p. 29.
[10] Doc. 41-5, p. 1.
[11] Doc. 50-1, p. 2.
[12] Doc. 50-4, p. 1.
[13] Doc. 50-4, p. 1.
[14] Doc. 50-4, p. 2.
[15] Doc. 50-4, p. 2.
[16] Doc. 50-4, p. 2.
[17] Doc. 50-4, p. 2.

Morris contends that Jackson monitored her behavior, specifically her arrival time and the amount of time she spent at lunch, more closely than her male coworkers.[18] Deputy Mark Hinson ("Hinson") testified that Jackson kept an eye on everyone, but seemed to focus on Morris' arrival and departure times.[19] Morris also claims that Jackson told her she needed to wear "Depends … because [she took] too many restroom breaks."[20] Morris further attested to the fact that Jackson began denying her "coveted job assignments, overtime, transfers, vacation time, and leave."[21] Instead, Jackson assigned her to the "most undesirable division" in Court Security—the DMV.[22] According to Morris, Jackson also told her fellow colleagues to "stay away from [her]" and not to speak to her.[23]

Morris asserts that Jackson's mistreatment of her affected how her co-workers treated her.[24] For instance, Morris' co-workers teased her about her hair when she dyed it and "it came out a little redder than she wanted."[25] Her co-workers also teased her about her appearance by telling her that she looked like a Tasmanian devil.[26] Corporal Thomas Flynn ("Flynn") also raised his voice at Morris in a way that offended her.[27] On February 22, 2013, Morris filed a Letter of Complaint with Jackson in which she complained about Flynn's mistreatment.[28] According to Morris, Flynn "raised his voice at [her] in a disrespectful manner" in front of others on at least three occasions, and was making every attempt to require her to work the "walk through metal detector because it

---

[18] Doc. 50-2, pp. 13-14.
[19] Doc. 50-3, p. 32.
[20] Doc. 50-2, p. 14; Doc. 50-4, p. 3.
[21] Doc. 50-4, p. 2.
[22] Doc. 50-4, p. 3.
[23] Doc. 50-4, p. 2.
[24] Doc. 50-4, p. 4.
[25] Doc. 50-4, p. 4; Doc. 50-3, p. 43.
[26] Doc. 50-4, p. 4; Doc. 50-3, p. 43.
[27] Doc. 50-4, p. 4.
[28] Doc. 41-11, pp. 4-5; Doc. 50-2, pp. 31-32.

is believed to be the least liked work area in the front lobby."[29]  Morris submitted a Grievance Letter to Jackson dated August 16, 2013 in which she complained about working in a hostile working environment.[30]  She specifically complained of Flynn's use of a loud and disrespectful tone towards her on August 13, 2013, and claimed that he routinely abused his authority.[31]  Morris also stated that she felt ostracized as the only female in the division.[32]

Jackson disputes Morris' contentions and asserts that he treated Morris more favorably than the male deputies, and he claims that she was never denied access to extra duty or overtime assignments.[33]  Jackson also asserted that he has no control over transfers or reassignments.[34]  According to Jackson, all deputy constables that reported to him were monitored equally and required to "properly and accurately sign in on a timesheet when they arrive for work, leave and return from lunch, and leave for the day."[35]  Pursuant to the time management directive of the Constable's Office, all deputies assigned to Courtroom/Building Security were to report to front door security each morning and sign-in, all deputies were to sign-in and sign-out for lunch breaks, and no

---

[29] Doc. 41-11, pp. 4-5; Doc. 50-4, p. 4.
[30] Doc. 41-11, pp. 1-2; Doc. 50-4, p. 4.
[31] Doc. 41-11, pp. 1-2.
[32] Doc. 41-11, pp. 1-2; Doc. 50-2, p. 30.  The last page of Morris' Grievance Letter indicates that a copy was sent to Lieutenant Wagner, Captain Lawton, Chief Navarre, and Major Brown.   It also indicates that copy of her February 22, 2013 Letter of Complaint was included with August 2013 her Grievance.  Doc. 41-11, p. 2.
[33] Doc. 41-5, p. 1-2.
[34] Doc. 41-5, p. 3.
[35] Doc. 41-5, p. 2.

deputy could leave or abandon her post without being properly relieved,[36]  Morris signed and acknowledged the receipt of the foregoing directives on October 8, 2012.[37]

Jackson contends that "from a performance perspective, Deborah Morris is an employee that must be managed actively."[38]  It is undisputed that Morris had a history of back-dating her arrival times, and forward dating her departure times.[39]  Morris has been disciplined and counseled on her attendance for arriving late to work.[40]  It is also undisputed that Jackson discovered Morris asleep on the job at varying posts.[41]  As a result, Morris was reassigned to a post in a public area.[42]

On June 12, 2014, Morris was placed on administrative leave with pay pending the outcome of an investigation into whether Morris had violated Constable's Office Policy.[43]  The results of an Internal Affairs' investigation revealed that on June 12, 2014, Morris had violated Constable's Office policy by pursuing an individual in her personal vehicle.[44]  It was also determined that Morris' exercise of poor judgment throughout the incident amounted to neglect of duty.[45]  Based upon these findings, Internal Affairs personnel recommended a ninety (90) day suspension without pay for Morris.[46]  In spite of this recommendation, on August 14, 2014, the Constable's Office suspended Morris for thirty

---

[36] Doc. 41-7. The new directives were implemented on October 8, 2012, and provided, in pertinent part, as follows: "1. All Deputies assigned to Courtroom/Building Security shall report to (FDS) front door security each day upon arrival including the duty court deputy.  There will be no exceptions without prior notice or authorization, sign in is required;" "3. No deputy shall leave or abandon any post [o]r assigned duties without being properly relieved;" and "5. All Deputies shall use the sign-in/sign-out sheet for lunch breaks." Doc. 41-7.
[37] Doc. 41-7.
[38] Doc. 41-5, p. 1.
[39] Doc. 41-1, p. 2.  Undisputed.
[40] Doc. 41-6, pp. 1 and 3.
[41] Doc. 41-5, pp. 2 and 4 (photograph).
[42] Doc. 41-5, p. 2.
[43] Doc. 41-9.  The letter to Morris was dated June 13, 2014, but effective as of June 12, 2014 at 1700 hours.
[44] Doc. 41-9, pp. 2-5.
[45] Doc. 41-9, p. 4.
[46] Doc. 41-9, p. 2; Doc. 41-4, p. 2.

(30) days without pay.[47]  Later, the Constable's Office agreed to reduce her suspension to fifteen (15) days without pay and the removal of the action from her personnel file.[48]

On or about May 12, 2014, Morris filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") complaining of discrimination because of her sex.[49]  She did not mark the box next to "retaliation" on her Charge; she only marked the box next to "sex."[50]  On January 27, 2015, the EEOC issued Morris her Right to Sue letter.[51]

On April 28, 2015, Morris filed her lawsuit in state court asserting that she was discriminated against because of her gender and subjected to unlawful retaliation in violation of Title VII and the Louisiana Employment Discrimination law.[52]  Thereafter, Defendant removed Plaintiff's lawsuit to federal court.[53]  Plaintiff subsequently filed an *Amended Complaint*.[54]

Defendant now seeks dismissal of Morris' claims on summary judgment. Defendant contends that Morris' retaliation and sexual harassment hostile work environment claims must be dismissed for failure to exhaust administrative remedies.  In the alternative, Defendant asserts that Morris' retaliation and sexual harassment hostile work environment claims should be dismissed because she cannot prove essential

---

[47] Doc. 41-9, p. 3; Doc. 41-4, p. 2.
[48] Doc. 41-4, p. 2; Doc. 41-9, p. 6.  (On June 18, 2015, the Personnel Board of the Parish of East Baton Rouge "voted unanimously, 5-0, to approve the settlement offer between the City-Parish Constable's Office and Ms. Deborah Morris for the reduction of a 30-day suspension without pay to a 15-day suspension without pay and the removal of the action from Ms. Morris' employee file at the Constable's Office with reimbursement to be effective by the next pay period.").
[49] Doc. 25-3, p. 1 (signed and dated copy); Doc. 41-3, p. 1.
[50] Doc. 25-3, p. 1; Doc. 41-3, p. 1.
[51] Doc. 41-3, p. 2.
[52] Doc. 1-2, pp. 5-8.
[53] Doc. 1.
[54] Doc. 38; Doc. 37, p. 4 ("The Plaintiff is **ORDERED** to file an Amended Complaint within ten days of this Ruling.  The Plaintiff is advised to specifically allege all facts that give rise to her claims and to clearly state what causes of action she is bringing."(emphasis original)).

elements of the claims. Defendant further contends that Morris cannot show that its legitimate non-discriminatory reason for her suspension was pretext; therefore, her sex (gender) discrimination claim must also fail. Morris disagrees with the Defendant's arguments.

## II.    LAW AND ANALYSIS

### A.    Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[55] "An issue is material if its resolution could affect the outcome of the action."[56] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[57] "A party moving for summary judgment 'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[58] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[59] However, the non-moving party's "burden is not satisfied with some metaphysical doubt as to the

---

[55] Fed. R. Civ. P. 56(a).

[56] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005)(quoting *Weeks Marine, Inc. v. Fireman's Fund Ins. Co*., 340 F.3d 233, 235 (5th Cir. 2003)).

[57] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[58] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D.La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986))).

[59] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)(internal quotations omitted)).

material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[60]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[61] The Court must resolve all reasonable factual inferences in favor of the nonmoving party.[62] However, "[t]he court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[63] "Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without 'any significant probative evidence tending to support the complaint.'"[64]

B.     Exhaustion of Administrative Remedies

Defendant seeks dismissal of Morris' retaliation and sexual harassment hostile work environment claims for failure to exhaust her administrative remedies. Federal courts lack jurisdiction to consider Title VII claims unless they have been administratively exhausted, which generally means they have been presented to the Equal Opportunity Employment Commission ("EEOC").[65] In the Fifth Circuit, "[a]n employee may not base a Title VII claim on an action that was not previously asserted in a formal charge of

---

[60] *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal quotations and citations omitted)).

[61] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[62] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[63] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

[64] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249)(citation omitted)).

[65] *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006).

discrimination to the EEOC, or that could not 'reasonably be expected to grow out of the charge of discrimination.'"[66]  While the "scope of an EEOC complaint should be construed liberally" and courts "look slightly beyond" the "four corners" of the EEOC complaint "to its substance rather than its label," it must be sufficient to "trigger the investigatory and conciliatory procedures of the EEOC" for that claim.[67]  Importantly, "[c]ourts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation."[68]

     i.    Retaliation Claim

It is undisputed that Morris did not mark the "retaliation" box on her EEOC Charge of Discrimination ("EEOC Charge").[69]  Instead, Morris only marked the "sex" box on her EEOC Charge.[70]  Importantly, the Fifth Circuit has found that a plaintiff's failure to check a box on an EEOC Charge is not always fatal error.[71]  In *Sanchez v. Standard Brands, Inc.*, the Fifth Circuit concluded that a plaintiff's failure to check the "national origin" box on her EEOC Charge was "a mere 'technical defect or omission'"[72] and "decline[d] to hold that the failure to place a check mark in the correct box [was] a fatal error."[73]  The *Sanchez* court explained that "[t]he selection of the type of discrimination alleged, i.e., the selection of which box to check, is in reality nothing more than the attachment of a legal conclusion to the facts alleged."[74]  Instead, the court noted that "the only absolutely essential element

---

[66] *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012)(quoting *Pacheco*, 448 F.3d at 789).
[67] *Pacheco*, 448 F.3d at 788-89.
[68] *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008).
[69] Doc. 50, p. 9 (Plaintiff admitted that she "neglected to check the 'retaliation' box in her Charge."); Doc. 41-3, p. 1.
[70] Doc. 41-3, p. 1.
[71] *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970).
[72] *Id.* at 462.
[73] *Id.* at 463.
[74] *Id.* at 462.

of a timely charge of discrimination is the allegation of fact contained therein."[75]  Because

the plaintiff had alleged sufficient facts to give rise to a national origin discrimination claim,

the *Sanchez* court found that plaintiff's failure to mark the appropriate box did not bar her

from including her national origin discrimination claim in her complaint.[76]

> Morris' EEOC Charge includes the following relevant facts or "particulars":
>
> I have been subjected to harassment since August 1, 2008.
>
> Since I began working in Court Security in August 2008 I have been subjected to frequent and repeated harassment, which created a hostile and/or offensive work environment, thereby making it difficult to perform my duties.  Corporal Thomas Flynn, Male, was verbally abusive, including yelling and embarrassing me in front of co-workers and courtroom patrons. I was never given any special assignments or allowed to work overtime. Deputy Constable Steven Bell, Male, was allowed to work overtime.  In January 2014, I was told by Sergeant Alvin Jackson, Male, that I could not work overtime because the additional jobs were covered and I was not needed.  As the only female courtroom bailiff, I am treated differently from my male colleagues.
>
> I believe I have been discriminated against based on my sex, Female, in violation of LSA R.S. 23:301 et seq and Title VII . . . .[77]

Unlike the plaintiff in *Sanchez*, the Court finds that Morris failed to allege any facts in her

EEOC Charge that signal an intent to make a claim of retaliation.  Specifically, Morris'

statement does not refer to retaliation and is devoid of any facts suggesting that Morris

complained about the harassment or disparate treatment she allegedly experienced

because of her sex, or that she experienced any retaliatory conduct for making such

complaints.  In sum, nothing on the face of Morris' charge suggests that the EEOC should

have investigated a retaliation claim, nor was the Defendant put on notice of same.

---

[75] *Id.* at 463 (citing with approval the holding in *Wilson v. Monsanto Co.*, 315 F.Supp. 977, 979 (E.D.La. 1970)).
[76] *Id.* at 463-64.
[77] Doc. 41-3.

The Court further finds no merit in Morris' argument that her retaliation claim could have reasonably been expected to "grow" out of her EEOC Charge because her claims "contain[ed] the same core of operative facts that would have prompted an EEOC investigation into the retaliation claim."[78]  Initially, the Court points out that Morris' reliance on *Smith v. Bisso Marine, LLC*, is flawed, because it offers no guidance on whether a Title VII claim has been exhausted.[79]  Rather, the *Smith* court applied Rule 15 of the Federal Rules of Civil Procedure to determine whether newly asserted claims in an amended complaint related back to the claims in the original pleading.[80]

Morris also points to the United States Court of Appeals for the Sixth Circuit decision, *Tisdale v. Federal Express Corp.*, for support of her argument.[81]  In *Tisdale* the appellate court found that the plaintiff had exhausted his administrative remedies even though the retaliation claim was not included in the charge because "both his discrimination claim and retaliation claim contain[ed] the same common core of operative facts," which would have prompted an EEOC investigation into the retaliation claim."[82] The Court finds that Morris' reliance on *Tisdale* is misplaced, because it is a Sixth Circuit decision that does not rely upon any Fifth Circuit authority for the portion of the decision that is relevant to this case.  Within the Fifth Circuit "a claim is not reasonably expected to grow out of a Plaintiff's EEOC Charge where the claim is not alleged in the charge."[83]

---

[78] Doc. 50, p. 10.

[79] Doc. 50, p. 10; *Smith v. Bisso Marine, LLC*, Civ. Action No. 14-0697, 2016 WL 952043, at *4 (W.D.La. Mar. 4, 2016).

[80] *Id.*

[81] Doc. 50, p. 10; *Tisdale v. Federal Express Corp.*, 415 F.3d 516 (6th Cir. 2005).

[82] *Id.* at 528.

[83] *Barnes v. Rite-Aid*, Civ. Action No. 09-6629, 2010 WL 4553493, at *4 (E.D. La. Oct. 28, 2010)(quoting *Slocum v. Guardsmark, L.L.C.*, No. 08-685, 2008 U.S. Dist. Lexis 111360, at *7 (E.D. La. Dec. 20, 2008)(citing *Kebiro v. Walmart*, 193 Fed. Appx. 365, 367 (5th Cir. 2006); *Thomas v. Dep't. of Crim. Justice*, 220 F.3d 389, 395 (5th Cir. 2000))).

As recently as last year, the Fifth Circuit held that a plaintiff does not exhaust her administrative remedies when she has not marked the box for retaliation or described a claim retaliation in her charge.[84]

In this case, Morris did not mark the box for retaliation on her Charge or allege facts that would give rise to a retaliation claim.  Furthermore, a retaliation claim would not have reasonably expected to grow out of an EEOC Investigation of Morris' Charge.  Therefore, the Court finds that Morris has failed to exhaust her administrative remedies as to her retaliation claim, and it shall be dismissed without prejudice.

ii.      Sexual Harassment Hostile Work Environment Claim

Defendant also argues that "because the factual allegations supporting a Sexual Harassment Hostile Work Environment claim were not stated in the Charge, Plaintiff has failed to exhaust her administrative remedies with respect to such a claim, requiring dismissal of this claim."[85]  The Court disagrees.  As previously mentioned, Morris marked the box next to "sex" on her EEOC Charge.  In the factual statement or "statement of particulars" Morris claims that she was subjected to harassment.  Specifically, Morris asserted that since she began working in Court Security in 2008, she had "been subjected to frequent and repeated harassment, which created a hostile and/or offensive work environment."[86]  Construing the factual allegations liberally, the Court finds that Morris' EEOC Charge alleges facts which can be read to give rise to a sexual harassment hostile work environment claim.   Therefore, the Court finds that Morris has exhausted her administrative remedies as to her sexual harassment hostile work environment claim.

---

[84] *Anderson v. Venture Express*, 694 Fed. Appx. 243, 247 (5th Cir. 2017).
[85] Doc. 41-2, p. 14.
[86] Doc. 25-3, p. 1; Doc. 41-3, p. 1.

C.    Sex (Gender) Discrimination Claim

Title VII protects individuals from discrimination by an employer based on the "individual's race, color, religion, sex, or national origin."[87]   Discrimination claims may be proven by direct or circumstantial evidence.[88]   In cases such as this, where the plaintiff only presents circumstantial evidence related to her discrimination claim, the *McDonnell Douglas* burden shifting analysis applies.[89]   Initially, the plaintiff must establish a *prima facie* case of sex discrimination by showing that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subjected to an adverse employment action; and (4) she was either replaced by someone outside of her protected class or treated less favorably than other similarly situated employees outside of her class.[90]   If the plaintiff makes her *prima facie* showing, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.[91]   The defendant's "burden is one of production, not persuasion, and involves no credibility assessment."[92]   "If the defendant meets this burden, 'the onus shifts back to the plaintiff' to provide substantial evidence that the given reason is merely pretext or that the stated reason 'is only one of the reasons . . . and another 'motivating factor' is the plaintiff's protected characteristic.'"[93]

---

[87] 42 U.S.C. § 2000e-2(a)(1).

[88] *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015).

[89] *Easterling v. Tensas Parish School Bd.*, 682 Fed.Appx. 318, 321 (5th Cir. 2017)(citing *Wallace v. Methodist Hosp. System*, 271 F.3d 212, 219 (5th Cir. 2001)(citations omitted)).

[90] *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512-14 (5th Cir. 2001)

[91] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

[92] *Id.*

[93] *Carr v. Sanderson Farms, Inc.*, 665 Fed.Appx. 335, 338 (5th Cir. 2016)(quoting *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 347 (5th Cir. 2013)(quotations omitted)).

i.   Adverse Employment Actions

Defendant raises no challenge to the elements of Plaintiff's prima facie case of sex discrimination, save to dispute that some of the employment actions complained of do not rise to the level of adverse employment actions.   Although Defendant concedes that Morris' fifteen day suspension without pay amounts to an adverse employment action, Defendant maintains that Jackson's alleged denials of Morris' "requested and coveted job assignments, overtime, transfers, vacation time, and leave" do not.[94]   As a threshold matter, for Title VII discrimination claims, "[a]dverse employment actions include only ultimate employment actions, such as hiring, granting leave, discharging, promoting, or compensating."[95]         "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action."[96]   The Court will now address each of the alleged adverse employment actions in turn.

a.   Coveted Job Assignment

Aside from her conclusory attestation in her Declaration, Morris has cited no competent summary judgment evidence demonstrating that Jackson ever denied Morris' request for a "coveted" job assignment.   Therefore, the Court finds that this is not a viable adverse employment action for purposes of Morris' prima facie case.

b.   Denials of Overtime or Leave Requests

Before addressing the merits of whether denials of overtime or leave requests amount to adverse employment actions, the Court must address an evidentiary matter.

---

[94] Doc. 50-4, p. 2; Doc. 41-2, pp. 1, 7-10.

[95] *McCoy*, 492 F.3d at 559(quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)).

[96] *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004)(citing *Banks v. East Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)(quotation omitted)).

On July 27, 2016, Morris was deposed in this case.[97]  During her deposition, Morris stated that she had been denied overtime requests.[98]  When asked to describe these instances, Morris could describe only one:  Morris asked Jackson if she could work schools, but he denied her request.[99]  Similarly, when Morris stated she had been denied leave, she identified only one instance, where she was denied two days of leave before Christmas.[100]  In a subsequent Declaration, Morris attested that Jackson would "routinely deny [her] request for leave and vacation time" and that "Jackson refused to allow [her] to work overtime."[101]  A court may consider a declaration that merely supplements rather than contradicts prior deposition testimony on summary judgment.[102]  A declaration supplements testimony when it "clarifie[s] or amplifie[s] the facts by giving greater detail or additional facts not previously provided in the deposition."[103]  In this instance, the Court finds that Morris' Declaration fails to provide any greater detail or additional facts as to Jackson's denial of Morris' leave or requests for overtime.  Accordingly, these post deposition attestations shall not be considered by the Court.

Once again turning to the merit of Morris' claims, the Fifth Circuit has acknowledged that decisions that affect compensation may constitute actionable adverse employment actions in Title VII discrimination cases.[104]  In her deposition Morris testified that Jackson had denied her request to work school detail, because it was already

---

[97] Doc. 50-2, p. 1.
[98] Doc. 50-2, p. 25.
[99] Doc. 50-2, p. 26.  Morris further stated that when Jackson denied her overtime request, "[h]e had said that he someone to work them already."
[100] Doc. 50-2, p. 26.  From her deposition testimony, it is unclear which year this incident occurred.
[101] Doc. 50-4, p. 3 (signed on October 17, 2016).
[102] *S.W.S. Erectors, Inc. d/b/a, Southwest Signs v. INFAX, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996).
[103] *Id.*
[104] *Pegram,* 361 F.3d at 282.

covered.[105]  A one-time denial of overtime, does not amount to an adverse employment action.[106]  In other instances where overtime was deemed to be an adverse employment action, the evidence showed that the employee was "consistently denied opportunities to earn overtime" throughout her employment.[107]   In this case, Morris has offered evidence showing that she was denied overtime/detail on one occasion.  The Court finds that this single incident of denial of overtime does not amount to an adverse employment action

For similar reasons, Jackson's denial of Morris' two day request for leave before Christmas does not amount to an adverse employment action.  While denying an employee leave can constitute an adverse employment action, "[a] single denial of leave is not an adverse employment action when it affects leave on a specific date and time, but not the employee's amount of or right to take leave in general."[108]  Morris has provided no other competent summary judgment evidence of other instances where Jackson denied her leave requests.  Accordingly, the Court concludes that Morris' two day leave request before Christmas does not amount to an adverse employment action.

c.  Job Assignment or Transfer to DMW

Morris also appears to argue that her job assignment in the DMV was an adverse employment action because, in her opinion, it was the "least desirable division of all."[109]

---

[105] Doc. 50-2, pp. 25-26 ("Q. Have you ever been denied an overtime request?  A. Yes.  Q.  Can you tell me about that?  A. I asked Sergeant Jackson could I work schools, and he told me I couldn't work them. He said he had someone to work them already.").

[106] *Waters v. City of Dallas*, 3:11-CV-0540, 2012 WL 5363426, at *9 (N.D. Tex. Nov. 1, 2012)(citing *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000)*, abrogated on other grounds by Burlington Northern*, 548 U.S. 53 (2006)).

[107] *Holden v. Illinois Tool Works, Inc.*, Civ. Action No. H-06-2981, 2008 WL 183334, *10 (S.D. Tex. 2008).

[108] *Ogden v. Potter*, 397 Fed.Appx 938, 939 (5th Cir. 2010)(in the context of retaliation).  The Court notes that while this quote applied to the plaintiff's retaliation claim in *Ogden*, it applies with equal force in the discrimination context, because the applicable standard for determining whether an adverse employment action has occurred in a retaliation case is less stringent than that needed to establish a *prima facie* case of discrimination.  *See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006).

[109] Doc. 50-4, p. 3.

Morris testified that none of the other male deputies wanted to take the new assignment in the DMV because "it was a new division" and "they didn't know how the job would be up there."[110]  In this position, Morris sat in a student type desk/chair in the corner, where she claims she was "isolated from her colleagues."[111]  When she began her new assignment in the DMV, Morris also fingerprinted individuals and had to provide coverage for court.[112]

The Fifth Circuit has held that being given less favorable work assignments does not constitute a legally cognizable "adverse employment action."[113]  Therefore, Morris' belief that the DMV position was an undesirable job assignment, does not amount to an adverse employment action.  To the extent Morris may be arguing that her job assignment in the DMV was a transfer that amounted to a demotion, the Court finds that she has not offered any evidence showing that the reassignment was objectively worse.[114]  In other words, Morris has not offered any evidence showing that the reassignment or transfer to the DMV affected her pay, benefits, or was objectively less prestigious or interesting.[115]  Importantly, Morris' "subjective perception that a demotion has occurred is not enough."[116]  Without any additional evidence to show that her reassignment to DMV was objectively worse, the Court finds that Morris' reassignment or transfer does not amount to an adverse employment action.

---

[110] Doc. 50-2, pp. 19-20, and 24.

[111] Doc. 50-2, pp. 20-21; Doc. 50-1, p. 1.

[112] Doc. 50-2, p. 24.

[113] *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 555 (5th Cir. 1997).

[114] *Pegram*, 361 F.3d at 283 (quotation omitted).

[115] *Alvarado v. Texas Rangers*, 492 F.3d 605, 613 (5th Cir. 2007).

[116] *Forsyth v. City of Dallas, Tex.*, 91 F.3d 769, 774 (5th Cir. 1996).  *See also, Lutman v. McHugh*, 20 F.Supp.3d 575, (W.D. Tex. 2014)("A plaintiff's subjective belief that a new position is less prestigious, however, is insufficient to show that an adverse employment action has occurred: '[r]ather, a plaintiff must produce enough evidence to allow a reasonable trier of fact to conclude that, when viewed objectively, the transfer caused [him] harm.'"(quotation omitted)).

In summary, the Court finds that the only adverse employment action which survives summary judgment is Morris' fifteen day suspension without pay from the Constable's Office.

ii.    Defendant's Legitimate, Nondiscriminatory Reason

Having satisfied her burden of establishing a *prima facie* case of sex (gender) discrimination, the burden now shifts to the Defendant to offer a legitimate, non-discriminatory reason for suspending Morris from duty.

The Defendant has offered evidence showing that Morris was ultimately suspended for fifteen days without pay for violating Constable's Office Policy by pursuing a suspect in her personal vehicle on June 12, 2014.  The Defendant has provided a copy of the police report of the incident, internal memorandum outlining Morris' policy violation, disciplinary documentation related to the incident and supporting Morris' suspension, and General Order 103, which outlines the Defendant's policy prohibiting pursuits in unauthorized vehicles.[117]  General Order 103 allows a driver of an authorized emergency vehicle to engage in a pursuit.[118]  The Defendant's investigation and corresponding police reports show that Morris was not operating an authorized emergency vehicle when she pursued the suspect; rather, Morris was in her personal vehicle.[119]  The Defendant also concluded that as a POST certified law enforcement officer, Morris' decision to not take any action at the conclusion of the pursuit—after she had "pursued a speeding, careless driver over several miles, weaving in and out of trafficking and received Code-3 assistance from 8-10 Baton Rouge Police Department units"—amounted to neglect of

---

[117] Doc. 41-8; Doc. 41-9; Doc. 41-10.
[118] Doc. 41-10 (General Order 103: Vehicle Pursuits).
[119] Doc. 41-9, p. 4.

duty.[120]  Therefore, due to these violations of Constable's Office policies, the Defendant suspended Morris for fifteen days without pay.[121]  The Court finds that the Defendant has satisfied its burden of showing that it had a legitimate, non-discriminatory reason for suspending Morris for fifteen days without pay.[122]

      iii.    Pretext

Because the Constable's Office has met its burden of articulating a legitimate, nondiscriminatory reason for suspending Morris, she must now come forward with evidence sufficient for a reasonable trier of fact to conclude that the Defendant's stated reason for suspending Morris is "false or 'unworthy of credence,'" and that Morris' sex or gender was a motivating factor.[123]  In her opposition, Morris devoted no time or energy to show that the Defendant's proffered reason was merely pretextual.  In her statement of contested facts, however, Morris did object to the findings of the Defendant's investigation, and asserts what could be construed as a disparate treatment argument regarding her suspension.   The Court considers these points as arguments made in support of Morris' pretext argument.

Morris disputes certain factual findings of the Defendant's investigation into the incident on June 12, 2014.  According to Morris, she did not pursue a suspect in her personal vehicle; rather, she merely "followed" a suspect because she believed she was

---

[120] Doc. 41-9, p. 4.

[121] She was originally suspended for thirty days without pay; however, on appeal, Morris' suspension was reduced to fifteen days.  Doc. 41-9, pp. 3 and 6.

[122]  The Fifth Circuit has found that an employee's violation of company policy can be a legitimate, non-discriminatory reason for termination.  *See, Ng.-A-Mann v. Sears, Roebuck & Co.*, 627 Fed.Appx. 339, 341 (5th Cir. 2015); *Elliott v. Group Medical & Surgical Service*, 714 F.2d 556, 566 (5th Cir. 1983).

[123]  *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011)(quoting *Laxton v. GAP, Inc.*, 333 F.3d 572, 579 (5th Cir. 2003)).

assisting another police officer in an unmarked vehicle.[124]  This is not the proper dispute at the pretext stage.  The Fifth Circuit has explained that "[s]imply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext."[125]  In this case, the issue at the pretext stage is whether the Defendant's proffered reason—Morris' alleged violations of Constable's Office policies—even if incorrect, was the "real reason" for Morris' fifteen day suspension.[126]  Therefore, Morris' dispute with the factual findings of the Defendant's investigation will not carry her burden of showing pretext.

The Court further finds that Morris' attempt at a disparate treatment argument regarding her suspension must also fail.  Disparate treatment can create a genuine issue of material fact as to pretext, but in order to do so, Morris must adduce evidence that would enable a reasonable juror to find that the Defendant gave "preferential treatment to another [similarly situated] employee under 'nearly identical' circumstances."[127]  "The 'nearly identical standard' is a stringent standard—employees with different responsibilities, different supervisors, different capabilities, different work rule violations, or disciplinary records are not considered to be 'nearly identical.'"[128]  Morris falls far short of satisfying this stringent standard.  She has failed to proffer evidence of any fellow

---

[124] Doc. 50-1, p. 3.  Morris believed that the other unmarked vehicle was a police unit because she "saw the handcuffs hanging in the window of the unmarked vehicle." Doc. 50-2, p. 40.

[125] *See LeMaire v. La. Dep't. of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).  *See also, Kiel v. Texas Parks and Wildlife Dept.*, No. 1:14-CV-748-LY, 2016 WL 7616532 (W.D. Tex. June 16, 2016)("the pretext 'dispute is not whether the incident happened' or whether the employer's decision was correct or fair" (quoting *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 235 (5th Cir. 2015); *Hernandez v. Johnson*, 514 Fed. Appx. 492, 498 (5th Cir. 2013)).

[126] *Burton*, 798 F.3d at 235 (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002)). *See also, Jackson v. Tex. Parks and Wildlife Dept.*, Civ. Action No. 1:14-748-LY, 2016 WL 7616532, *7 ("the inquiry is whether the employer's perception of the plaintiff's actions, accurate or not, was the real reason for the adverse employment action" (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003)).

[127] *Bryant v. Compass Group USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)(quoting *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001)).

[128] *Eyob v. Mitsubishi Caterpillar Forklift America, Inc.*, 2017 WL 3215171, * (S.D. Tex. July 28, 2017)(citing *Player v. Kan. City S. Ry. Co.*, 496 Fed. Appx. 479, 481 (5th Cir. 2012)(quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009)).

employees as a comparators who were disciplined differently under nearly identical circumstances.  Instead, Morris offers only her own subjective belief that her "status as a female" was a factor in her suspension, and the conclusory generalization that no other male deputy had ever been suspended like her "for an alleged violation of policy which resulted in no harm to civilians or damage to property."[129]  Conclusory statements and Morris' subjective belief alone cannot create a genuine dispute of material fact that the Defendant's proffered legitimate non-discriminatory reason was merely pretext for gender or sex discrimination.[130]  Accordingly, Morris' sex (gender) discrimination claim shall be dismissed.

D.    Sexual Harassment Hostile Work Environment Claim

The Defendant seeks dismissal of Morris' sexual harassment hostile work environment claim because she cannot show that her employer knew or should have known of Jackson's harassment and failed to take prompt remedial action.[131]  Defendant points to evidence in the record showing that Morris refused to file a complaint against Jackson.[132]  To establish a Title VII sexual harassment claim based on hostile work environment, the plaintiff-employee must show: (1) that she belongs to a protected class; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment affected a "term, condition, or privilege" of

---

[129] Doc. 50-1, p. 4; Doc. 50-4, p. 4.
[130] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996)(en banc)(citations omitted)(on a summary judgment motion a non-moving party must come forward with more than "conclusory allegations, speculation, and unsubstantiated assertions.").
[131] Doc. 51, pp. 4-5.
[132] Doc. 50-6, pp. 19-20; 23-24.  (When Lt. Vernon Scott with Internal Affairs learned of an incident from another Deputy, where Jackson allegedly gave Morris a key to a hotel room, Scott contacted Morris "to see if it was true and [he] told her it's [his] job to protect her."  Although Morris did not deny the incident had occurred, she told Scott that "we don't tell on supervisors in New Orleans."  Scott further testified that Morris did not file a complaint, even though he made sure that opportunity was available to her.).

employment, and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action."[133]   However, in cases where the alleged harasser is a supervisor with immediate or higher authority over the harassed employee, the employee need only satisfy the first four elements of the foregoing test.[134]   In this case, it is undisputed that Jackson was Morris' immediate supervisor, therefore, Morris need not satisfy the fifth element.  Hence, Defendant's argument lacks merit.

Nonetheless, the Court has reviewed Morris' *Amended Complaint* and finds that she has failed to allege a sexual harassment hostile work environment claim against Jackson.  On March 8, 2017, the Court ordered Morris, who has been represented by counsel throughout this lawsuit, to file an *Amended Complaint* due to the confusion caused by the description of her claims.[135]   Morris was "advised to specifically allege all facts that give rise to her claims and to clearly state what causes of action she is bringing."[136]   The Court finds that, while Morris clearly pled a gender (sex) discrimination claim against Jackson in her *Amended Complaint*, she failed to allege a sexual harassment hostile work environment claim against Jackson.  Therefore, Morris' sexual harassment hostile work environment claim against Jackson shall be dismissed with prejudice.

In her *Amended Complaint*, Morris alleges that she experienced mistreatment by her fellow coworkers at the Constable's Office.  She contends that Flynn raised his voice

---

[133] *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298 (5th Cir. 2001)(citing *Shepherd v. Comptroller of Public Accounts of the State of Tex.*, 168 F.3d 871, 873 (5th Cir. 1999)). To affect a term, condition, or privilege of employment, the harassment must be "sufficiently severe or pervasive so as to alter the conditions of the [plaintiff's] employment and create an abusive working environment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002).
[134] *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).
[135] Doc. 37.  It is also worth noting that Plaintiff never asserted a sexual harassment hostile work environment claim in her original *Petition* (Doc. 1-2) or in the *Joint Status Report* (Doc. 5).
[136] Doc. 37, p. 4.

in a disrespectful manner on several occasions, and that other coworkers would call her names or mock her hair or appearance. The Court construes these factual allegations as supporting a co-worker sexual harassment hostile work environment claim. Whether or not this claim can withstand summary judgment has yet to be determined. Because the Defendant has not sought summary judgment on this particular claim, it remains Morris' only viable Title VII and state law claim.

The Court hereby *sua sponte* orders each of the parties to provide supplemental memoranda, citing to record evidence, addressing whether Morris' co-worker sexual harassment hostile work environment claim should be dismissed on summary judgment grounds.[137]   This is the only claim that shall be briefed in the parties' respective memoranda.

### III.    CONCLUSION

For those reasons set forth above, the *Motion for Summary Judgment* filed on behalf of the Defendant, the Baton Rouge City Constable's Office, is hereby GRANTED IN PART and DENIED IN PART.[138]  It is hereby ordered that Deborah Morris' Title VII and state law claims of retaliation are hereby dismissed without prejudice for failure to exhaust her administrative remedies.   It is further ordered that Deborah Morris' sex (gender) discrimination claim and supervisor sexual harassment hostile work environment claim are hereby dismissed with prejudice.

It is further ordered that the parties shall have **21 days** from the date of entry of this *Ruling* to file supplemental memoranda, citing to record evidence, addressing

---

[137] The Court notes that the Plaintiff will have to prove all five elements for her co-worker sexual harassment hostile work environment claim.
[138] Doc. 41.

whether Morris' co-worker sexual harassment hostile work environment claim should be dismissed on summary judgment grounds. The parties shall be limited to fifteen (15) pages for their respective briefs, exclusive of exhibits.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>March 13, 2018</u>.


_____

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**